Filed 1/28/25  Nazarians v. City of Los Angeles CA2/4

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

ANDREH NAZARIANS et al.,

Plaintiffs and Appellants,

v.

CITY OF LOS ANGELES et al.,

Defendants and Respondents.

B322088

(Los Angeles County Super. Ct. No. 19STCV05665)

APPEAL from a judgment of the Superior Court of Los Angeles County, William A. Crowfoot, Judge. Affirmed.

Geragos & Geragos, Daniel Tapetillo and Ben J. Meiselas for Plaintiffs and Appellants.

Hydee Feldstein Soto, City Attorney; Denise C. Mills, Chief Deputy City Attorney; Scott Marcus, Chief Assistant City Attorney; Shaun Dabby Jacobs, Supervising Attorney; and Sara Ugaz, Deputy City Attorney for Defendants and Respondents City of Los Angeles, Nicholas Virzi, Jenyffer Del Rio Ortega, and Michael Martinez.

Orbach Huff & Henderson and Kevin Ellsworth Gilbert for Defendant and Respondent Axcel Mannoury.

## INTRODUCTION

Following the fatal shooting of their son, Orbel Nazarians, by a Los Angeles Police Department (LAPD) officer, Andreh Nazarians and Angel Movses (collectively, plaintiffs) filed this lawsuit against the police officers involved in the shooting and their employer, the City of Los Angeles (City). They asserted claims for negligence and wrongful death.[1]

Plaintiffs now appeal from the judgment entered after the trial court granted defendants' motion for summary judgment. Because no reasonable juror could find the use of deadly force under these circumstances was unreasonable, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On February 26, 2018, at approximately 8:43 a.m., Orbel[3] called 911 and gave his home address to the operator. He then told the operator he "found [his] dad's handgun and [he had] a knife and [he was] going to blow [his] brains out." He told the operator to send someone "fast." In response to the operator

---

1    Plaintiffs dismissed the federal claims alleged in their complaint (third and fourth causes of action).

2    We note that, in their supposed factual summary of the case, plaintiffs refer us only to their memorandum of points and authorities in opposition to defendants' motion for summary judgment. But factual assertions in a memorandum of points and authorities are not evidence. (See *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 578.) We therefore disregard the statement of facts in plaintiffs' appellate brief.

3    Because the decedent, Orbel Nazarians, and his father, Andreh Nazarians, share the same surname, we respectfully refer to the decedent by his first name.

asking if he was alone, Orbel answered "no" and that his "mom [was] sleeping." He then said he had a handgun in his left hand and a "long knife," which he also referred to as a "sword," in his right hand. The entire call lasted a little less than three minutes.

In response to the 911 call, the LAPD dispatched six officers, including the four individual defendants: Officers Axcel Mannoury, Michael Martinez, Jenyffer Del Rio Ortega, and Nicholas Virzi. The officers' Body-Worn Videos (BWVs) recorded the entire incident from the time the officers were dispatched until Orbel was shot approximately six minutes later.

Officer Mannoury and his partner Officer Martinez, Officer Ortega and her partner (non-defendant Officer Jerry Williams), and Officer Virzi and his partner (non-defendant Officer Scott Stanick), drove to Orbel's house in three different patrol vehicles and arrived at different times. Officers Ortega and Williams arrived first, followed by Officers Mannoury and Martinez, and finally Officers Virzi and Stanick. Because Officers Mannoury and Martinez were designated as the primary unit, Officers Ortega and Williams waited for them to arrive before approaching Orbel's home.

The following summary is based on the BWVs. Officer Martinez, a probationary officer, drove while Officer Mannoury was in the passenger seat. As they drove to Orbel's house, Mannoury relayed the information he learned from the 911 operator to Officer Martinez. Specifically, Officer Mannoury stated that Orbel reported he had a "handgun and a knife," "he want[ed] to kill himself," and that "his mother [was] [at the] location sleeping." Officer Mannoury further stated Orbel also reported having a "sword," so the call might be a "5150," referring to a 72-hour psychiatric custody hold under Welfare and

3

Institutions Code, section 5150. He told Officer Martinez to "take [his] time on this one," and that he wanted "one contact [officer and one cover [officer]."[4] He advised Officer Martinez to "be sure of [his] target," "handle the threat first [and] . . . broadcast later," and to "deal with the . . . most urgent thing first, which is the threat."

At approximately 8:50 a.m., seven minutes after Orbel called 911, Officers Mannoury and Martinez arrived at the scene and parked a few houses away from Orbel's house.[5] Officer Mannoury told Officer Martinez to "grab [his] taser" and told Officers Ortega and Williams to "grab [their bean bag shotguns]."

Officer Martinez then told Officer Mannoury that he "know[s] this house."[6] Officer Mannoury responded: "That's fine, I'm not going to take any chances."

As they approached the house, the garage door immediately began to roll up. Officer Martinez took cover behind a large tree in front of the house near the street. Officer Mannoury continued walking in the street toward the house and took cover behind the house's large concrete mailbox. At this time, Officer Virzi parked

---

4     Officer Mannoury served as the "incident commander" of the call, and he designated himself as the contact officer and Officer Maritnez as the cover officer.

5     Defendants' separate statement of undisputed facts states Officers Mannoury and Martinez arrived at Orbel's house at approximately 8:47 a.m. But Officer Martinez's BWV indicates he arrived at the house at approximately 8:50 a.m.

6     On a previous occasion, Officer Martienz had taken Orbel to Mission Community Hospital for a 5150 hold.

his patrol car and told his partner, Officer Stanick, "Hey, the garage is opening."

Orbel ducked under the garage door as it rolled up and began to walk down his driveway toward Officer Mannoury but said nothing. Orbel had a knife in his right hand and an object wrapped inside a towel in his left hand. While standing behind the mailbox, Office Mannoury said "[Orbel], let me see your hands." Orbel did not comply or say anything in response; instead he continued to walk toward Officer Mannoury. Officer Mannoury yelled "drop it!" three times and raised his gun. Orbel momentarily stopped in the driveway for less than two seconds. Orbel then suddenly began to run toward Officer Mannoury and raised the knife above his head. Officer Mannoury yelled "drop it!" two more times while back pedaling into the street with his gun pointed at Orbel.

As Orbel was running toward Officer Mannoury, Officer Virzi fired his taser and Officer Ortega simultaneously fired two bean bag rounds at Orbel. Neither the taser electrical charge nor the bean bag rounds made contact with or struck Orbel. Within two seconds of Orbel charging towards Officer Mannoury, Officer Martinez shot one bullet at Orbel, killing him. Less than 15 seconds elapsed between Orbel emerging from the garage and Officer Martinez shooting him.

Officer Mannoury immediately requested a rescue ambulance for Orbel. The fire department arrived and pronounced Orbel dead at the scene.

Orbel's parents subsequently sued the City and Officers Mannoury, Martinez, Ortega, and Virzi for negligence and wrongful death (and other claims that plaintiffs later dismissed). Defendants moved for summary judgment or, in the alternative,

summary adjudication, on the ground that plaintiffs' claims fail as a matter of law because the officers' use of force was objectively reasonable. They further argued that Officers Mannoury, Ortega, and Virzi did not cause plaintiffs' harm and the officers were entitled to immunity. Plaintiffs opposed the motion, primarily arguing triable issues of material fact exist regarding whether the officers failed to use objectively reasonable force under the totality of the circumstances, including the officers' preshooting conduct and their alleged failure to develop a tactical plan.

After a hearing on the motion, the trial court took the matter under submission. The court then issued a nine-page order granting defendants' motion. It found Officer Martinez's use of deadly force fell within the range of reasonable conduct, noting: "[T]he video evidence shows that the initial contact between [Orbel] and the Officers lasted merely moments before [Orbel] began charging towards Officer Mannoury holding a weapon and lethal force was used. No reasonable trier of fact could conclude that the use of force under the circumstances was unreasonable." The trial court further held no triable issues of material fact exist regarding the reasonableness of the officers' preshooting conduct, including the officers' alleged failures to develop a tactical plan and to implement de-escalation methods.

The trial court entered judgment in favor of defendants. Plaintiffs timely appeal from the judgment.

## DISCUSSION

### A. Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment

6

as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. (*Id.*, subd. (p)(2).) If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. (*Ibid.*) A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent. [Citation.] We must affirm a summary judgment if it is correct on any of the grounds asserted in the trial court, regardless of the trial court's stated reasons." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636-637.)

**B.     The Trial Court Properly Granted Summary Judgment Because No Reasonable Trier of Fact Could Conclude The Use of Deadly Force Was Unreasonable Under The Circumstances**

We begin by framing the precise contention on appeal. Plaintiffs do not argue triable issues of material fact exist regarding whether the officers were justified in using deadly force when Orbel charged at Officer Mannoury while holding a knife. (See, e.g., *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 345 ["'[A]n officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack. In these

7

circumstances, the Courts cannot ask an officer to hold fire in order to ascertain whether the suspect will, in fact, injure or murder the officer'"].) Rather, they argue the trial court erred by not considering any of defendants' preshooting conduct to determine whether the officers acted reasonably, as required by California law. As discussed in detail below, however, the record demonstrates the trial court extensively considered the officers' preshooting conduct and correctly concluded that, based on the totality of the circumstances, no reasonable trier of fact could conclude the use of force was unreasonable.

"[I]n order to prove facts sufficient to support a finding of negligence, a plaintiff must show that [the] defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury." (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 292.) Similarly, "'[t]he elements of the cause of action for wrongful death are the tort (negligence or other wrongful act), the resulting death, and the damages, consisting of the pecuniary loss suffered by the heirs. [Citations.]'" (*Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 806.)

Police officers "have a duty to act reasonably when using deadly force." (*Hayes v. County of San Diego* (2013) 57 Cal.4th 622, 629 (*Hayes*).) "The reasonableness of an officer's conduct is determined in light of the totality of circumstances." (*Ibid.*) "[P]reshooting conduct is included in the totality of circumstances surrounding an officer's use of deadly force, and therefore the officer's duty to act reasonably when using deadly force extends to preshooting conduct." (*Id.* at p. 632.)

The undisputed evidence and the BWVs show: (1) the officers were aware Orbel was armed with a gun and a knife, that

he was suicidal, and his mother was asleep in the home; (2) upon the officers' arrival, Orbel opened the garage door and began advancing toward Officer Mannoury while holding a knife in one hand while his other hand was concealed by a cloth; (3) Orbel refused to comply with several verbal commands to drop the weapon; (4) Orbel abruptly charged toward Officer Mannoury and raised the knife above his head; (5) the officers attempted to use less-lethal force, including a taser and beanbag shots, which missed Orbel; (6) Officer Martinez then discharged the single shot, which killed Orbel; and (7) less than 15 seconds elapsed between Orbel emerging from the garage and Officer Martinez shooting him.

Based on these undisputed facts, defendants satisfied their initial burden on summary judgment to show that plaintiffs' claims fail because Officer Martinez acted reasonably in using deadly force. (See *Hayes, supra*, 57 Cal.4th at p. 632 [As long as an "'officer's conduct falls within the range of conduct that is reasonable under the circumstances, there is no requirement that he or she choose the "most reasonable" action or the conduct that is the least likely to cause harm and at the same time the most likely to result in the successful apprehension of a violent suspect, in order to avoid liability for negligence'"].)

The burden therefore shifted to plaintiffs to establish the existence of a triable issue of material fact. Plaintiffs argue the officers failed to develop a tactical plan, and that failure led to Officer Martinez's unreasonable use of deadly force. Specifically, they first argue triable issues of material fact exist regarding whether the officers acted reasonably in assuming Orbel was a threat to others, given that this was an attempted suicide. We acknowledge Orbel reported to the 911 operator that he wanted

9

to harm himself only. That is not how the events unfolded, however. As discussed above, as soon as the officers approached Orbel's house, he immediately came out from the garage with a knife in one hand and an object concealed by a cloth in other, refused to drop the weapon (or concealed item) in response to Officer Mannoury's repeated commands to drop the weapon, and suddenly charged at Officer Mannoury with the knife above his head.[7] Even viewing the facts most favorably to plaintiffs, no reasonable juror could find the officers unreasonably determined Orbel posed an imminent threat.

Plaintiffs also argue the officers' preshooting conduct was unreasonable because Officer Mannoury "unsoundly served as both the incident commander and con[tact] officer throughout the entire incident despite policies and procedures stating to separate the two roles"; Officer Martinez "assumed the role of cover officer with lethal [force] (even though he was assigned to be less lethal with a taser)"; and the officers failed to "properly address a person with serious mental illness[.]" But these critiques ignore the volatility and urgency of the extremely brief encounter with Orbel. The LAPD immediately dispatched the officers to Orbel's house in response to Orbel's 911 call in which he reported he had a gun and told the operator to send someone fast. Orbel emerged from the garage with a weapon as soon as the officers approached his house. As our Supreme Court explained: "[T]he reasonableness of the officers' preshooting

_____

7	Orbel may have been attempting to commit "suicide by cop," a concept the plaintiffs ignore. "[S]uicide by cop" refers to an instance in which a person attempts to commit suicide by provoking the police to use deadly force. (*Villalobos v. City of Santa Maria* (2022) 85 Cal.App.5th 383, 391.)

10

conduct should not be considered in isolation. Rather, it should be considered in relation to the question whether the officers' ultimate use of deadly force was reasonable." (*Hayes, supra*, 57 Cal.4th at p. 632.) Officer Martinez's ultimate use of deadly force was objectively reasonable under the totality of circumstances. (See *ibid.* ["'[T]he "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight'"]; see also *Martinez v. County of Los Angeles, supra*, 47 Cal.App.4th at p. 343 ["The test of reasonableness . . . is an objective one, viewed from the vantage of a reasonable officer on the scene. It is also highly deferential to the police officer's need to protect himself and others[.] . . . 'The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation'"].)

Plaintiffs lastly argue that, in addition to the officers' alleged tactical failures, the officers also failed to consider Orbel's long history of mental illness. They argue triable issues of material fact exist regarding whether the officers failed to follow standard police procedures in confronting a mentally ill individual (i.e., request backup, calm the situation, avoid physical contact, determine if the person is taking medication, acknowledge the persons' feelings, and do not make threats). In making this argument, plaintiffs rely solely on *Tabares v. City of Huntington Beach* (9th Cir. 2021) 988 F.3d 1119 (*Tabares*). That case is inapposite, however.

Unlike the facts here, in *Tabares*, before interacting with the decedent, the officer had "no reason to suspect [the decedent]

was dangerous" or "had a weapon[.]" (*Tabares, supra*, 988 F.3d at p. 1128.) The officer did not receive a call for service regarding the decedent. (*Id.* at p. 1123.) Rather, the decedent caught the officer's attention because he was "wearing a sweater on a warm day, walking abnormally, made fidgeting, flinching movements with his hands, and looked over in [the officer's] direction several times. (*Ibid.*) The officer therefore decided to talk to the decedent, and detained him for an "unspecified reason." (*Ibid.*) The situation eventually escalated, leading to the officer shooting the decedent seven times. (*Id.* at p. 1124.) The *Tabaras* court held, based on those circumstances, ample evidence supported the allegations that the officer "potentially failed to deescalate the situation per [police regulations] regarding potentially mentally ill individuals." (*Id.* at p. 1128.) None of the facts in *Tabaras* is present here. It is, therefore, unhelpful to Orbel's position. Even if the officers knew Orbel was mentally ill, there was simply no time to de-escalate the situation.

In addition to concluding no reasonable trier of fact could find Officer Martinez's use of deadly force was unreasonable under the circumstances, including the officers' preshooting conduct, we agree with the trial court that Officers Mannoury, Ortega, and Virzi are entitled to judgment as a matter of law for an independent reason. As the trial court explained, they did not harm Orbel (it is undisputed that Officer Martinez fired the shot that killed Orbel) and thus, plaintiffs cannot establish a necessary element of their claims for negligence and wrongful death. (See *Lopez v. City of Los Angeles* (2011) 196 Cal.App.4th 675, 687-688 [where it was undisputed that another police officer fired the shot that killed plaintiff's daughter, the plaintiff "cannot

12

establish liability for negligence or wrongful death based on [an officer's] shot" that did not kill plaintiff's daughter].)

We recognize that reasonable minds may differ about how police officers should best respond to calls for assistance involving threats of suicide by armed individuals who are living with mental illness. But it is not our role to establish general policies and procedures. Rather, our role in this case is to determine whether plaintiffs carried their burden to present evidence creating a triable issue of material fact whether the use of force, including the officers' preshooting conduct, was unreasonable. Because we conclude they did not, we must therefore hold the trial court properly granted defendants' motion for summary judgment.[8]

---

[8] Because the officers cannot be liable, there is no basis for respondeat superior liability against the City. (*Martinez v. County of Los Angeles, supra,* 47 Cal.App.4th at p. 350; Gov. Code, § 815.2)

## DISPOSITION

We affirm the judgment and award defendants their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

CURREY, P. J.

We concur:

MORI, J.

ZUKIN, J.