**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| ELIZABETH CORNEL,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>STATE OF HAWAII; HAWAII PAROLING AUTHORITY; DEXTER KAUAHI, Badge No. 1199,<br>*Defendants-Appellees*,<br><br>and<br><br>DOES, JOHN; 1–10; DOES, JANE; 1–10; DOE PARTNERSHIPS, 1–10; DOE CORPORATIONS, 1–10,<br>*Defendants*. | No. 20-17425<br><br>D.C. No.<br>1:19-cv-00236-JMS-RT<br><br><br>OPINION |

Appeal from the United States District Court
for the District of Hawaii
J. Michael Seabright, Chief District Judge, Presiding

Argued and Submitted February 16, 2022
Honolulu, Hawaii

Filed June 10, 2022

Before:  Michael Daly Hawkins, Ryan D. Nelson, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge R. Nelson

# SUMMARY*

## Civil Rights

The panel affirmed the district court's summary judgment in favor of defendants in an action alleging constitutional and state law violations when plaintiff was arrested seven years after the suspension of her parole.

Plaintiff was on parole when she was evicted from her apartment. She sent a letter to the parole office about her eviction and provided updated contact information, but the parole office was unable to contact her with the information provided. The parole office then suspended plaintiff's parole and issued a "retake warrant." Plaintiff was arrested seven years later. At the revocation hearing, the parole office decided not to revoke plaintiff's parole, retroactively rescinded her parole suspension, restored her parole end date to March 2015, and released her from custody. During the two months she was detained, plaintiff lost her home, business, and pets.

The panel held that the parole officer permissibly suspended plaintiff's parole. Plaintiff's arrest was reasonable under the Fourth Amendment because the parole office had a reasonable belief that she violated her parole. Because the Fourteenth Amendment does not require notice to a parolee before a parole suspension hearing, and because plaintiff was largely responsible for the seven-year delay in her arrest, her arrest did not violate due process. Plaintiff's state law claims failed because the defendants had not

---

* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

waived immunity for false imprisonment or false arrest, and she could not establish the elements of her negligence and intentional infliction of emotional distress claims.

## COUNSEL

Paul V.K. Smith (argued) and Terrance M. Revere, Revere & Associates, Kailua, Hawaii, for Plaintiff-Appellant.

William K. Awong (argued) and Caron M. Inagaki, Deputy Attorneys General; Clare E. Connors, Attorney General; Office of the Attorney General, Honolulu, Hawaii; for Defendants-Appellees.

## OPINION

R. NELSON, Circuit Judge:

Elizabeth Cornel was on parole when she was evicted from her apartment. When the parole office could not find her, it suspended her parole and issued a "retake warrant." Cornel was arrested seven years later. We hold that the seven-year delay in Cornel's arrest did not violate due process because Cornel was largely responsible for the delay. We also hold that the parole office permissibly suspended Cornel's parole and that her arrest was not unreasonable under the Fourth Amendment. Cornel's state law claims fail because Hawaiʻi is immune from liability for her intentional tort claims and Cornel failed to establish negligence.

I

Elizabeth Cornel was released on parole in 2007, with her sentence set to expire in March 2015. As a condition of her parole, Cornel had to keep the parole office informed of her whereabouts.

The first four years of Cornel's parole proceeded uneventfully—so uneventfully, Cornel says, that her parole officer intended to apply for Cornel's early discharge. The record does not show that the parole officer ever submitted a discharge application. But it does show that Cornel was evicted from her apartment in 2011. She sent a letter to the parole office about her eviction and provided an updated P.O. box address, temporary physical address, and phone number. After receiving Cornel's letter, the parole office tried—and failed—to contact Cornel. Her phone number would not receive incoming calls. Mail sent to the P.O. box was returned as undeliverable. And when a parole officer visited the address, Cornel was not there.

The parole office issued a "retake warrant" for Cornel's arrest and suspended her parole. Cornel had no contact with the parole office after her eviction but assumed that "everything was fine" and that she had been discharged from parole. Cornel lived openly on Oahu from 2011 until 2018. Over the course of those years, she visited city, county, and state offices, filed tax returns, registered a business with Hawaiʻi's Department of Commerce and Consumer Affairs (in 2016), and renewed her driver's license (in 2017). She also signed leases for two Oahu properties.

The record does not show how frequently the parole office sought to locate Cornel. But the parole office periodically reviews available records and social media accounts to generate leads on outstanding retake warrants.

These reviews generally occur about once a month. During one of these routine checks, the parole office learned that Cornel had used a Waimanalo address to renew her driver's license. Cornel was arrested in February 2018 by Officer Dexter Kauahi—shortly after renewing her license but almost seven years after the retake warrant was issued.

Following Cornel's arrest, the parole office extended her maximum parole term to account for her suspension and advised Cornel of her right to appear at a preliminary hearing and present evidence. Cornel waived her right to a pre-revocation hearing and acknowledged that she would be detained. At the revocation hearing, the parole office decided not to revoke Cornel's parole, retroactively rescinded her parole suspension, restored her parole end date to March 2015, and released her from custody.

During the two months she was detained, Cornel lost her home, business, and pets. Cornel sued Kauahi, the parole office, and the State of Hawaiʻi for violating her Fourth and Fourteenth Amendment rights and for various torts under Hawaiʻi law. The district court granted summary judgment to the defendants.

## II

We review de novo the district court's decision to grant summary judgment, viewing the evidence in the light most favorable to the nonmoving party. *Frudden v. Pilling*, 877 F.3d 821, 828 (9th Cir. 2017). "When interpreting state law, we are bound to follow the decisions of the state's highest court . . . ." *Diaz v. Kubler Corp.*, 785 F.3d 1326, 1329 (9th Cir. 2015) (citation omitted).

## III

We start with Cornel's constitutional claims. Section 1983 provides a cause of action against "[e]very person who, under color of" law deprives another of "rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes are not 'persons' under § 1983." *Doe v. Lawrence Livermore Nat'l Lab'y*, 131 F.3d 836, 839 (9th Cir. 1997) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70 (1989)). There are thus two situations in which a state official might be liable to suit under the statute. First, plaintiffs may seek damages against a state official in his personal capacity. *Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016). Second, state officials are "persons" under § 1983 when sued for prospective injunctive relief. *Will*, 491 U.S. at 71 n.10. This exception for prospective injunctive relief, called the *Ex parte Young* doctrine, applies where a plaintiff "alleges an ongoing violation of federal law, and where the relief sought is prospective rather than retrospective." *Doe*, 131 F.3d at 839 (quoting *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 294 (1997) (O'Connor, J., concurring)).

Cornel cannot seek damages from Hawai'i and the parole office because they are not "persons" under § 1983.[1] Although Kauahi could be subject to suit under *Ex parte Young*, 209 U.S. 123 (1908), Cornel identifies no ongoing violation of federal law to enjoin. Her § 1983 claim is

---

[1] Cornel contends that Hawai'i and the parole office consented to jurisdiction over her § 1983 damages claims by removing the case to federal court. But she confuses state waiver of Eleventh Amendment immunity with the separate inquiry of whether state defendants are "persons" under § 1983.

therefore limited to damages against Kauahi in his personal capacity.

As a state official, Kauahi is entitled to qualified immunity from a claim for damages unless Cornel raises a genuine issue of fact showing (1) a violation of a constitutional right that (2) was clearly established at the time of the alleged misconduct. *See Evans v. Skolnik*, 997 F.3d 1060, 1064 (9th Cir. 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). "We may address these two prongs in either order." *Id.* (quoting *Sandoval v. Las Vegas Metro. Police Dep't*, 756 F.3d 1154, 1160 (9th Cir. 2014)). The Supreme Court recognizes two circumstances where reaching the constitutional issue first would be beneficial: "[1] cases in which the court cannot readily decide 'whether a right is clearly established without deciding precisely what the existing constitutional right happens to be,' [2] and cases involving 'questions that do not frequently arise in cases in which a qualified immunity defense is unavailable.'" *Id.* at 1065 (quoting *Pearson*, 555 U.S. at 236). We conclude that both circumstances apply here and therefore begin with the constitutional issues raised by Cornel's claims.

A

Cornel argues that her arrest violated the Fourth Amendment in four ways. First, she contends that the retake warrant was "stale" by the time of her arrest in 2018. Second, she labels her arrest unreasonable because it was three years after the "maximum parole date" noted on the retake warrant. Third, Cornel asserts that the government's interest in arresting her seven years after the alleged violation was *de minimis*. Finally, she argues that the arrest violated Hawai'i law.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend IV. "Under the general Fourth Amendment approach, we assess reasonableness by examining the totality of the circumstances and balancing the intrusion on the individual's privacy against the promotion of legitimate governmental interests." *Sherman v. U.S. Parole Comm'n*, 502 F.3d 869, 883 (9th Cir. 2007) (citing *Samson v. California*, 547 U.S. 843, 848 (2006)). In most criminal cases, we interpret "reasonableness" to require "a judicial warrant issued upon probable cause." *Id.* (quoting *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989)). But these requirements do not always apply to searches and seizures of parolees. Because "[r]evocation of parole is not part of a criminal prosecution," we do not extend parolees "the full panoply of rights" promised to people not yet convicted of a crime. *Id.* at 883 (citation omitted). Although a parolee is not "at the unfettered mercy of the parole authorities, [s]he is justifiably subjected to restrictions not applicable to the population as a whole." *Latta v. Fitzharris*, 521 F.2d 246, 250 (9th Cir. 1975).

For these reasons, "probable cause is not required to arrest a parolee for a violation of parole." *Sherman*, 502 F.3d at 884 (citation omitted). Instead, a parole officer may arrest a parolee if the officer "reasonably believes a parolee is in violation of [her] parole." *United States v. Rabb*, 752 F.2d 1320, 1324 (9th Cir. 1984). In the search context, we have permitted searches of a parolee and her home based on a "hunch" arising from what an officer has learned or observed about the parolee. *Latta*, 521 F.2d at 250.

Of course, an officer's reasonable belief—like probable cause—can become "stale" over time. Cornel argues that is the case here—i.e., that her arrest was unreasonable because

seven years had passed since the retake warrant was issued. But "[t]he mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Lacy*, 119 F.3d 742, 745 (9th Cir. 1997) (quoting *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988)). Rather, "[w]e evaluate staleness in light of the particular facts of the case and the nature of the criminal activity." *Id.* (quoting *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993)). If "there is sufficient basis to believe, based on a continuing pattern or other good reasons," that the basis for a parole officer's reasonable belief still exists, a retake warrant is still valid. *See id.* at 745–46 (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984)).

The evidentiary support for Cornel's arrest is not the kind that dissipates over time. The parole office had a reasonable belief that Cornel violated her parole because it could not contact her with the information she provided. Although Cornel argues there is a material dispute of fact whether she violated her parole conditions, there is no evidence that Cornel could, in fact, be contacted with the information she provided. Cornel says that she provided the parole office with updated contact information and it never contacted her. Notably missing is any declaration that Cornel was, in fact, able to be reached at the phone number, mailing address, and physical address provided. The parole office asserts Cornel could not be reached. And Cornel does not raise a genuine dispute of fact on that point.

We also disagree with Cornel's assertions that the government's interest in her arrest was *de minimis* and that her arrest was unreasonable because the retake warrant noted a 2015 maximum parole date. We have recognized that the government's interest in monitoring parolees is more than *de minimis*. *See Rabb*, 752 F.2d at 1324 ("[O]nce a violation is

established, the public interest in apprehending parole violators outweighs the parolee's privacy interest."). And although Cornel argues that she had no reason to believe that she could be in violation of her parole three years after her original maximum parole date, "Fourth Amendment reasonableness is predominantly an objective inquiry." *Ashcroft v. al-Kidd*, 563 U.S. 731, 736 (2011) (quotation marks and citation omitted). So Cornel's subjective expectations do not render the arrest unreasonable. Instead, we ask "whether the circumstances, viewed objectively, justify the challenged action." *Id.* (brackets, quotation marks, and citation omitted).

Cornel's arrest was reasonable. Kauahi reasonably believed that Cornel was in violation of her parole because Cornel could not be contacted and, other than the one letter that she sent with insufficient contact information, she took no action to ensure that the parole office could maintain contact with her. Her parole was lawfully suspended, and the retake warrant was properly issued. *See* Haw. Rev. Stat. § 353-66(c). Kauahi had more than a "hunch" that Cornel violated her parole; he had a properly issued arrest warrant. *See Rabb*, 752 F.2d at 1324. The maximum parole date on the retake warrant was not a magical deadline for the parole office. As Kauahi explains, a retake warrant does not reflect adjusted parole dates after a parole suspension. Even though Cornel was arrested after the maximum parole date on the warrant, nothing about the date suggests unreasonableness.

Cornel also contends that her arrest violated Hawai'i law. According to Cornel, the parole office could only suspend her parole if her whereabouts were not known because of her neglect. Cornel also points to Hawai'i Penal Code Rule 9(c), which requires that arrest warrants be executed "without unnecessary delay."

Even if Cornel's arrest violated state law, it was not necessarily a violation of her Fourth Amendment rights. The Supreme Court has rejected the notion that a violation of state law automatically violates the Fourth Amendment. *Virginia v. Moore*, 553 U.S. 164, 173 (2008). "[W]hen a State chooses to protect . . . beyond the level that the Fourth Amendment requires, these additional protections exclusively are matters of state law." *Tabares v. City of Huntington Beach*, 988 F.3d 1119, 1122 (9th Cir. 2021) (quoting *Moore*, 553 U.S. at 171) (quotation marks and brackets omitted). We hold that Cornel's arrest was reasonable under the Fourth Amendment despite the parole office's possible violation of the Hawai'i Penal Code.

B

Cornel next argues that her parole suspension and arrest violated due process. In particular, she contends that she was entitled to a hearing before her parole was suspended and that the parole office's seven-year delay violated the Fourteenth Amendment.

1

The parole office's decision to suspend Cornel's parole in 2011—after trying and failing to contact her with the information she provided—did not violate due process because the Fourteenth Amendment does not require notice before a parole suspension hearing. *See Morrissey v. Brewer*, 408 U.S. 471, 485–90 (1972). Indeed, at the earliest available opportunity, Cornel was given due process and a hearing. Furthermore, Cornel was not prejudiced by the suspension because the parole office ultimately did not revoke her parole.

2

Nor did the delay in Cornel's arrest violate her due process rights.  Fifty years ago, we stated that "[t]here is substantial authority for the position that due process requires reasonable diligence in the issuance and execution of a warrant for arrest for an alleged parole violation." *McCowan v. Nelson*, 436 F.2d 758, 760 (9th Cir. 1970) (per curiam) (collecting cases).  We have never explained what "reasonable diligence" requires.  We now clarify that "reasonable diligence" is but one factor to consider when evaluating whether a delay in arrest violates due process, and we hold that a delay in a parolee's arrest does not violate due process when the parolee is largely responsible for the delay and cannot demonstrate prejudice.

We have considered similar timeliness concerns in the context of the Speedy Trial Clause, parole revocation proceedings, and a now-repealed federal statute that granted jurisdiction to issue retake warrants.[2]  In Speedy Trial cases,[3]

---

[2] Timeliness challenges under the retake-warrant statute are "not a jurisdictional issue but, instead, . . . one of due process." *United States v. Berry*, 814 F.2d 1406, 1410 (9th Cir. 1987).  The analogy is apt because both inquiries address the concern that "a warrant issued *ex parte* could be held against an unknowing [parolee] indefinitely, and executed at any time for reasons unrelated to the original violation." *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir. 1983).  Although *Hill* concerned a warrant for a probation violation, the same principles apply because "[p]arole, probation, and supervised release revocation hearings are constitutionally indistinguishable and are analyzed in the same manner." *United States v. Hall*, 419 F.3d 980, 985 n.4 (9th Cir. 2005).

[3] "In the context of revocation of supervised release [or parole], Speedy Trial Clause authority is applicable only by analogy, but in the past we have found that analogy helpful, though we have not probed how

we balance the "'[l]ength of delay, the reason for the delay, the defendant's assertion of [her] right, and prejudice to the defendant.' None of these four factors are either necessary or sufficient, individually, to support a finding that a defendant's speed[y] trial right has been violated." *United States v. Mendoza*, 530 F.3d 758, 762 (9th Cir. 2008) (quoting *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). At about one year, a delay becomes presumptively prejudicial. *Id.*

Of course, timeliness in going to trial differs from the administration of parole. Parolees challenging the timeliness of parole revocation hearings must show both unreasonable delay and prejudice to obtain relief. *Santana*, 526 F.3d at 1260. The length of delay is a factor in evaluating whether the delay was reasonable,[4] but is not dispositive when "the [parolee's] own conduct caused the delay between issuance and execution of the warrant." *See Hill*, 719 F.2d at 1405. And even if the delay is unreasonable, parolees must show that they suffered prejudice.[5]

---

far the analogy goes." *United States v. Santana*, 526 F.3d 1257, 1260 (9th Cir. 2008).

[4] *See, e.g.*, *Hill*, 719 F.2d at 1405 (two-and-a-half-year delay was unreasonable when the government knew where to find the probationer and no effort was made to serve the warrant); *Santana*, 526 F.3d at 1260 (distinguishing *Hill* and Speedy Trial presumption of prejudice for lack of extreme delay).

[5] At least two other circuits agree that delay without prejudice does not violate due process in the post-sentencing context. *See, e.g.*, *United States v. Sanchez*, 225 F.3d 172, 175–77 (2d Cir. 2000) (delay between violation and issuance of summons does not violate due process absent prejudice); *United States v. Tippens*, 39 F.3d 88, 90 (5th Cir. 1994) (per

The Sixth Circuit has similarly held that a parolee's partial responsibility for the delay in his arrest precludes a due process violation. *Bennett v. Bogan*, 66 F.3d 812, 819 (6th Cir. 1995). In *Bennett*, a parolee challenged his arrest that occurred five and a half years after the retake warrant was issued. *Id.* at 818. As here, the parolee lived openly in the jurisdiction and filed tax returns. *Id.* at 814. Even so, the Sixth Circuit held that the parolee was "in part responsible for the delayed execution of the warrant" because he "failed to report to his probation officer and failed to remind the State . . . that he was required to serve a state sentence." *Id.* at 819. Although the State's delay bordered on inexcusable neglect, the parolee's lack of diligence precluded a due process violation. *Id.*

Like the parolee in *Bennett*, a prompt arrest by the Hawaiʻi parole office would have resolved the matter quickly and allowed Cornel to "pa[y any] debt to society and return[] to [her] community unencumbered." *See id.* And, like the *Bennett* parolee, Cornel was the main reason for the delay in her arrest. *See id.* To be sure, notions of fundamental fairness seem to require that the government execute a retake warrant with reasonable speed. But we have never held that the Due Process Clause requires the government to find and arrest a suspect in a specified amount of time. We would face a thornier question if there were evidence that the parole office had actual knowledge of Cornel's whereabouts. Instead, Cornel gave the parole office new contact information, never responded to the parole office's attempts to contact her with that information,

---

curiam) (citation omitted) ("[A] delay in executing a violator's warrant may frustrate a [parolee's] due process rights if the delay undermines [her] ability to contest the issue of the violation or to proffer mitigating evidence.").

and now blames the parole office for taking too long to figure out where she was.

Cornel failed to fulfill her parole obligation to provide the parole office with correct and up-to-date contact information. Even if the parole office should have acted more diligently, Cornel was not deprived of due process when the delay was mainly caused by her failure to inform the parole office of her whereabouts. We therefore affirm the district court's grant of summary judgment to Kauahi on Cornel's § 1983 claim.

C

Aside from her constitutional claims, Cornel also brings state law claims for false arrest, false imprisonment, intentional infliction of emotional distress (IIED), negligent infliction of emotional distress (NIED), and gross negligence. The district court granted summary judgment to Kauahi because he was entitled to qualified privilege. It granted summary judgment to Hawai'i and the parole office because (1) they had not waived liability for false imprisonment and false arrest under the State Tort Claims Act, Haw. Rev. Stat. ch. 66; and (2) Cornel had failed to establish elements of her IIED, NIED, and gross negligence claims. We affirm.

1

Under Hawai'i law, nonjudicial government officials have a qualified privilege for tortious actions taken in the performance of their public duty. *Towse v. State*, 647 P.2d 696, 702 (Haw. 1982). "[I]n order for an action to lie against an official acting under a claim of privilege, . . . the injured party [must] allege and prove . . . that the official had been motivated by malice and not by an otherwise proper

purpose." *Id.* Although malice is usually a question for the jury, the court may rule on the existence or absence of malice based on uncontroverted affidavits or depositions. *Runnels v. Okamoto*, 525 P.2d 1125, 1129 (Haw. 1974).

On appeal, Cornel argues that Kauahi is not shielded by qualified privilege because he arrested her on a "facially invalid" warrant and acted unreasonably in doing so. She does not argue that Kauahi was motivated by malice; instead, she contends that a malice requirement is unconstitutional because malice is not required under the Fourth Amendment. Cornel's argument impermissibly conflates the legal standards under the Fourth Amendment and Hawai'i law. *Cf. Tabares*, 988 F.3d at 1122. Hawai'i is not constitutionally required to provide a cause of action for Fourth Amendment violations, so Cornel must establish malice to prevail on her state law claims. Kauahi asserts that warrants with maximum parole term dates that have already expired are still considered outstanding and should be served. He believed that the retake warrant was still outstanding, valid, and needed to be served. Before the arrest, Kauahi had never met Cornel and "had no ill-will or malice toward [her]." Because there is no evidence of malice, the district court properly granted summary judgment to Kauahi.

## 2

Cornel argues that Hawai'i and the parole office can be liable for false arrest and false imprisonment through respondeat superior liability, and because her arrest was "outrageous" (presumably under Hawai'i's standard for IIED).

Neither Hawai'i nor the parole office can be vicariously liable for false imprisonment or false arrest because the State

Tort Liability Act does not waive immunity for those claims. Haw. Rev. Stat. § 662-15 (State Tort Liability Act "shall not apply to . . . [a]ny claim arising out of . . . false imprisonment [or] false arrest."); *see Doe Parents No. 1 v. State, Dep't of Educ.*, 58 P.3d 545, 578–79 (Haw. 2002), *as amended* (Dec. 5, 2002).

Cornel's IIED claim also fails because she cannot identify sufficiently "outrageous" conduct. Under Hawai'i law, "the elements of IIED are '(1) that the act allegedly causing the harm was intentional or reckless, (2) that the act was outrageous, and (3) that the act caused (4) extreme emotional distress to another.'" *Enoka v. AIG Haw. Ins. Co.*, 128 P.3d 850, 872 (Haw. 2006), *as corrected* (Feb. 28, 2006) (citation omitted). "The term 'outrageous' has been construed to mean 'without just cause or excuse and beyond all bounds of decency.'" *Id.* (citation omitted). "The question whether the actions of the alleged tortfeasor are . . . outrageous is for the court in the first instance, although where reasonable persons may differ on that question it should be left to the jury." *Shoppe v. Gucci*, 14 P.3d 1049, 1068 (Haw. 2000) (quotation marks and citations omitted).

Although the seven-year delay in executing Cornel's retake warrant was far from ideal, it was not "outrageous" for purposes of IIED. Cornel had not served her sentence, and her parole had not been discharged at the time of her arrest. Perhaps the parole office should have acted more diligently in locating Cornel after she failed to keep it informed of her whereabouts, *see State v. Owens*, 172 P.3d 484, 492 (Haw. 2007), but Cornel has identified no conduct "beyond all bounds of decency," *see Enoka*, 128 P.3d at 872 (quotation marks and citation omitted).

Cornel's negligence-based claims also fail. A negligence action under Hawai'i law requires "(1) [a] duty,

or obligation, recognized by the law," (2) a breach of that duty or obligation, "(3) [a] reasonably close causal connection between the conduct and the resulting injury; and (4) [a]ctual loss or damage resulting to the interests of another." *Molfino v. Yuen*, 339 P.3d 679, 682 (Haw. 2014) (quoting *Takayama v. Kaiser Found. Hosp.*, 923 P.2d 903, 915–16 (Haw. 1996)). Absent certain circumstances, NIED requires that someone was physically injured by the defendant's conduct. *Doe Parents No. 1*, 58 P.3d at 580. "Gross negligence is an aggravated form of negligence, which differs from ordinary negligence only in degree and not in kind." *State v. Bunn*, 440 P.2d 528, 534 (Haw. 1968).

Hawai'i law requires parole arrest warrants to be executed "without unnecessary delay." *See* Haw. Rev. Stat. § 353-66(c). But even if the defendants had a duty to execute the arrest warrant within a reasonable time, Cornel fails to show that the parole office's alleged delay caused damages. If Kauahi had arrested Cornel earlier, she still would have faced the same loss of liberty. She therefore fails to establish the damages element of her negligence-based claims.

IV

The parole office permissibly suspended Cornel's parole. Cornel's arrest was reasonable under the Fourth Amendment because the parole office had a reasonable belief that she violated her parole. Because the Fourteenth Amendment does not require notice to a parolee before a parole suspension hearing, and because Cornel was largely responsible for the seven-year delay in her arrest, her arrest did not violate due process. And Cornel's state law claims fail because the defendants have not waived immunity for

false imprisonment or false arrest and she cannot establish the elements of her remaining claims.

**AFFIRMED.**